Helen ARTHUR et al.,
Plaintiffs-Appellants,

v.

Blanche ROYSE, Administratrix of the
Estate of Charles Royse, Deceased,
Defendant-Respondent.

No. 39902.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Oct. 17, 1978.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 17, 1978.

Devereaux & Stokes, Michael D. Stokes,
St. Louis, for plaintiffs-appellants.

Kortenhof & Ely, Ben Ely, Jr., St. Louis,
Ely & Cary, Ben Ely, Sr., Hannibal, for
defendant-respondent.

GUNN, Judge.

On August 5, 1974, plaintiff Helen Arthur was injured in one of a series of three collisions which occurred at the intersection of Hampton and Hancock Avenues in St. Louis. Charles Royse, driver of the vehicle that initiated the chain of accidents, died of an apparent heart attack some time during the mishap. Mrs. Arthur and her husband sued the administratrix of Royse's estate and now appeal from a jury verdict which denied their prayer for damages. Appellants contend that they suffered prejudice as the result of the trial court's submission of defendant's verdict directing instruction. We agree and reverse and remand.

■ The evidence adduced at trial indicated that Charles Royse had a history of heart disease, including two documented coronaries, prior to his death at age 67. On August 5, 1974, at approximately 7:00 p. m., he was travelling in the middle lane of the three southbound lanes on Hampton Avenue. The weather was clear and dry. As he approached the intersection of Hampton and Hancock, Royse sideswiped an unoccupied vehicle in the lane to his right, then proceeded forward into the rear of the automobile in which Mrs. Arthur was a passenger. Mr. Arthur, driver of that car, had intended to turn right onto Hancock Avenue. The force of the impact pushed his car into another vehicle which had been preparing to turn left from Hancock onto Hampton. Walter Sansone, driver of that fourth car, testified that he had looked to his left immediately after hearing the first impact and saw Royse slump sideways behind the steering wheel before striking the Arthurs' car. The first police officer to arrive at the scene examined Royse for vital signs and concluded that he was dead. Royse was taken to City Hospital and pronounced dead on arrival. A subsequent inspection of the body revealed no evidence of bruises, cuts or other trauma. No autopsy was ever performed. The official death certificate signed by Royse's physician, Dr. Frede Martensen, indicated that the cause of death was acute myocardial infarction. This determination was based solely on Dr.

Martensen's knowledge of Royse's previous medical history. Dr. Martensen testified that it would be impossible to state with certainty whether the heart attack occurred before or after Royse struck the first vehicle. During cross-examination, however, he agreed that a consideration of the facts of the incident and knowledge of the decedent's heart condition made it more probable that the attack occurred prior to the initial collision. Dr. Belmont Thiele, medical expert for the defendant, concurred with Dr. Martensen's second conclusion. Nevertheless, a jury question did exist as to whether a heart attack occurred before or after the first collision.

■ Instruction 5, the source of appellant's complaint and cynosure of this appeal, embodies the key to respondent's defense. The instruction reads:

Your verdict must be for the defendant on the claims of both Helen Arthur and Frederick Arthur for damages, if you believe:

First, defendant's decedent, Charles Royse, suffered a heart attack immediately before *either* of the collisions mentioned in the evidence; and

Second, defendant's decedent, Charles Royse, did not know and by using the highest degree of care could not have known that he would suffer a heart attack; and

Third, such heart attack of defendant's decedent, Charles Royse, directly caused the collisions mentioned in the evidence.

The term "highest degree of care" as used in this Instruction means that degree of care that a very careful and prudent person would use under the same or similar circumstances. (emphasis added)

If the collisions were not caused by decedent's negligence but were ascribed instead to an "Act of God" (i. e.: a fatal heart attack), then the decedent should be absolved of any liability. In order to invoke the "Act of God" defense, however, the human actor must have exercised due care prior to the intervention of the super-human cause. Any negligence on the part of the decedent which concurred with the Act

of God as the proximate cause of the accident would reinstate Royse's responsibility. *Kennedy v. Union Electric Co. of Missouri,* 358 Mo. 504, 216 S.W.2d 756, 763 (Mo.banc 1948); *Corrington v. Kalicak,* 319 S.W.2d 888 (Mo.App.1956).

When the result in part is ascribable to the participation of man, either through active intervention or neglect or failure to act, "the whole occurrence is thereby humanized, as it were, and removed from the operation of the rules applicable to the acts of God." *Kennedy,* supra, 216 S.W.2d at 763 [quoting *Whitaker v. Pitcairn,* 351 Mo. 848, 174 S.W.2d 163, 168 (1943)].

Hence, if Royse were negligent in striking the first auto, which triggered the heart attack, he could be liable for the collision with plaintiff's auto. Conversely, if the attack came before he struck the first car, the intervening Act of God (the heart attack) would exculpate him.

■ Appellant argues that instruction 5 was prejudicially erroneous because it was ambiguous, it misdirected the jury and was open to a construction at variance with the law of Missouri. All of these evils were attributed to the choice of a single word in the first proposition of the instruction: "either." Appellant complains that a jury could interpret "either of the collisions" to mean "one or the other." As a consequence of the instruction, decedent would be relieved of responsibility for the entire incident even if he negligently sideswiped the parked vehicle and suffered the fatal heart attack later. We concur with appellant's argument.

It is apparent from the wording of Paragraph First that the jury must return a favorable verdict for the respondent if they found that Royse had his heart attack either before the first collision *or after* the first collision but before the second collision with appellant's car. And with the latter case, the instruction would be erroneous.

■ Respondent argues, and we agree, that we must review the offending language in the light of the entire instruction. *Goodwin v. S. J. Groves & Sons Co.,* 525 S.W.2d 577 (Mo.App.1975); *Collier v. Roth,* 515 S.W.2d 829 (Mo.App.1974). Respondent then directs attention to Paragraph Third of the instruction and argues that it cures or satisfactorily explains any misconception regarding Paragraph Third, to wit: that reference to his heart attack causing the collisions mentioned in the evidence means the first as well as following collisions. We agree with respondent that the ultimate test for correctness of an instruction is whether it follows the substantive law and whether it will be correctly understood by a jury composed of average lay people. *Kirkwood Medical Supply Co. v. Ann Patterson Enterprises, Inc.,* 511 S.W.2d 433 (Mo.App. 1974); *Koirtyohann v. Washington Plumbing & Heating Co.,* 494 S.W.2d 665 (Mo.App. 1973). But we find the ambiguity, error and misconception of Paragraph First too egregious to be corrected by the subtlety of Paragraph Third. Instruction 5, therefore, contains a misstatement of the law which is ground for reversal and remand of the case. To be in proper form, Paragraph First should allow the jury to find for defendant if they believed that Royse suffered his heart attack immediately before the *first* collision—not either of the collisions mentioned in the evidence.

Respondent contends that the established lexicons provided several definitions for the word "either," including the word "both." But the fact that "either" could have several meanings exacerbates the conflict and confusion within the instruction. Instruction 5 fails to meet the test recited in *Woodford v. Illinois, Gulf Central R. Co.,* 518 S.W.2d 712, 716 (Mo.App.1974), that it be not "confusing, misleading, inadequate nor prejudicially erroneous . . .;" that the language "be so plain that no doubt can arise as to its meaning."

Reversed and remanded.

REINHARD, P. J., and CLEMENS, J., concur.